ANDREW J. WIGGIN *vs.* THE ELDER AND DEACONS OF THE FIRST FREEWILL BAPTIST CHURCH IN LOWELL.

When an incorporated religious society, that owns a meeting-house, neither makes any by-laws, nor passes any vote providing for the warning of its meetings, and has no assessors nor committee authorized to issue a warrant for meetings, it can legally call and warn a meeting only in the manner prescribed by the seventeenth or thirty fifth section of *c.* 20 of the revised statutes: And where a meeting of such a religious society was called by its clerk, on the application of less than five of the proprietors of the meeting-house, it was held that a vote, passed at such meeting, appointing an agent to convey the real estate of the society, was invalid, and that a conveyance of the estate by him was void as against a creditor of the society who subsequently attached the estate, and levied his execution upon it.

The meetings of a joint stock corporation must be called by personal notice to all the members, unless some other provision is made in its charter or by-laws; and a vote passed at a meeting not so called is not binding.

A clerk of a corporation is a competent witness to identify its books and verify its records, though he is a member of the corporation, and interested in the suit in which those books and records are used as evidence

WRIT OF ENTRY to recover one undivided seventy eighth part of a parcel of land, and a meeting-house thereon, in Lowell. The demandant made claim under a levy of an execution, which issued on a judgment recovered by him against the Proprietors of the First Freewill Baptist Meeting-house in Lowell. The demanded premises were attached, by the demandant, on the 12th of November 1842, and were levied upon on the 20th of February 1844. No objection to the form of the levy was taken by the tenants.

The tenants claimed the demanded premises under the two following instruments: 1st. A lease to them for twenty years, by indenture made on the 19th of May 1841, by the Proprietors of the First Freewill Baptist Meeting-house in Lowell, and executed, on their part, by Nathaniel Thurston, their agent. This indenture was recorded, in the registry of deeds, on the 14th of August 1841. One of the provisions therein was, that upon payment of certain sums of money by the lessees, (the present tenants,) the demised premises should become their absolute property. 2d. An indenture made on the 27th of October 1842, between said Proprietors of the First Freewill Baptist Meeting-house, of the first part, and the tenants, of the second part. This indenture was executed, on the part of said proprietors, by Nathaniel Thurston, their agent, and conveyed to the tenants, among other real estate, the premises demanded in this suit, to have and to hold, to them and their successors in office forever, for certain uses and trusts in said indenture set forth.

At the trial before *Wilde*, J. the demandant objected, to the indentures above mentioned, that Nathaniel Thurston, by whom they were executed, as agent of the said proprietors, had no sufficient authority from them to execute the same; and that the elder and deacons by whom said indentures were executed, for said church, were not duly chosen or authorized to execute them.

The tenants gave in evidence the records of the Proprietors of the First Freewill Baptist Society in Lowell, from which the following facts appeared: On the 1st of October 1842, Nathaniel Thurston, Lydia Clement, William Gray, and Ira Caverly, members of said corporation, made a written application to Daniel G. Holmes, the clerk of the corporation, to notify and warn a meeting of the proprietors, to be held on Friday, the 14th day of said October, at the Bethel of their house, at two o'clock, P. M., for the purpose of ascertaining and determining whether they would sell the meeting-house, land, &c. to the First Freewill Baptist Church, and to choose a committee or committees to complete the contract and give the church a good title by

deed, &c.   The notice was given by the clerk, on the said day, 1st of October, warning a meeting to be held on the 14th, agreeably to the application, by posting notices on the church door, and in two other public places in the city.   On the 14th of October, agreeably to the notice, the following proprietors attended, viz. Nathaniel Thurston, Ira Caverly, Lydia Clement, Mehitabel Gordon and William Gray.   At this meeting, a vote was passed to sell the meeting-house, &c. to the First Freewill Baptist Church ; and a committee, consisting of the elder and deacons of that church, attended, and the terms of sale were agreed upon ; and it was also voted that the agent of said corporation, Nathaniel Thurston, be authorized to give a deed of the premises, and to take a mortgage on the meeting-house, to the corporation, or such other security as should hold the corporation harmless until the purchase money should be paid. The meeting was then adjourned to the next day, to be held at the house of the clerk, at 2 o'clock.   The proprietors (whose names are not recorded) met accordingly, and passed sundry votes, not necessary to be here stated, and adjourned to Monday the 17th of the same October, to meet at 3 o'clock, P. M at the house of the clerk ; at which time and place they met, and adjourned to the next day, the 18th, at the same place and hour of the day.   On the 18th, the record states that a meeting of "the proprietors" (whose names are not recorded) was held, and that a report was received from the agent and committee aforesaid, in regard to the sale of the meeting-house, by which the terms of sale were proposed to be varied.   This report was accepted, and the agent was authorized to execute a deed in conformity to the report.   The meeting was then adjourned to Friday, the 21st of the same October, to be held at the house of the clerk, at 3½ P. M.   The meeting was then and there held accordingly, and adjourned to the 25th of the same October, at the same hour of the day, and at the same place, when. and where a meeting was held, and adjourned to the 28th of the same month, at the same hour of the day, and at the same place.   The meeting was held on the 28th of October, and was adjourned to the 1st of November 1842, and from that day to

the 8th of the same month. At the meeting on the 8th of November, the clerk was requested to notify such of the proprietors, as were not present, of the adjournment of the meeting to the next day, and request their attendance, provided they were in the city ; and also to notify such proprietors that their agent had received proposals relating to the sale of other property, and wished to consult them thereon ; and the meeting was then adjourned to the 9th of said November, at 10 o'clock, A. M. It did not appear what notice the clerk gave of this adjournment. A meeting was held on said 9th of November, at the hour appointed, and was adjourned to $3\frac{1}{2}$ o'clock, P. M. on the same day, and was thence adjourned to November 10th, and thence to November 11th. The names of the proprietors who met at the adjournment on the 11th were not recorded ; but the record states that " the said proprietors met," and that it was voted, among other things, " to confirm all the records and proceedings of the said proprietors, which may have been invalid in law, by reason of any legal defect or otherwise, and that the same are hereby confirmed, and the clerk is hereby directed to attest the same." The meeting was continued by adjournments until December 14th 1842, when it was " voted to adjourn without day, and the meeting was then adjourned."

It appeared that on the 30th of March 1836, by *St.* 1836, *c.* 80, (7 Special Laws, 612,) Nathaniel Thurston, Samuel Folsom, and Abram S. Holbrook, their associates and successors, were made a corporation, by the name of the Proprietors of the First Freewill Baptist Meeting-house in Lowell, with the rights and privileges, and subject to the duties and liabilities, incident to religious societies in this Commonwealth, with power to hold real and personal estate, the annual income of which, exclusive of such meeting-house as they might erect, with the land under and appurtenant to the same, should not exceed $1000 ; provided the same should be appropriated exclusively to parochial purposes : That on the 17th of August 1836, the persons named in said act of incorporation, and their associates, accepted said act, and chose a secretary, president, treasurer and seven directors · That in the same month, a committee was appointed to

select a piece of land for a meeting-house, and take a convey-ance thereof in behalf of the proprietors : That this committee, on the 19th of October following, reported that they had pur-chased a lot of land on Merrimack Street ; and that this report was accepted : That on the 2d of November 1836, a commit-tee was appointed to erect a building on said land ; and that a meeting-house was erected thereon as early as February 1838 : That in 1839, the corporation purchased other lots of land, adjoining their meeting-house : That in August 1840, in con-sequence of an application made by said proprietors to borrow money of the Lowell Institution for Savings, their records were examined by the solicitor of said institution, and the proprietors thereupon organized anew, under a call of a meeting by a justice of the peace, conformably to the provisions of the Rev. Sts. *c.* 20, §§ 26, 27, and then voted to confirm " all the record pro-ceedings of the said proprietors which may have been invalid in law, by reason of any legal defect or otherwise," &c. : It also appeared that the said proprietors afterwards proceeded as before, calling meetings, usually by their clerk, on the applica-tion of proprietors, except at the season for their annual meet-ings. It did not appear, however, that the proprietors ever passed any by-laws or vote as to the manner of warning their meetings, or any other by-laws, nor that they ever had any assessors or committee authorized to call meetings.

It appeared that the yearly income of the meeting-house and stores under it was $2000, and that the whole yearly income of the property of the corporation was more than $3000.

After the tenants had introduced the proprietors' records, they called Daniel G. Holmes, the proprietors' clerk, to identify and verify those records, &c. ; and he was admitted to testify, although the demandant objected to his competency, on the ground that he was one of the creditors of the corporation, whom the tenants had agreed to pay, on their receiving the conveyance of the demanded premises, &c. under the inden-ture of October 27th 1842.

The demandant objected to the validity of the two inden-tures above mentioned. on various grounds which need not be

26 *

here stated. It was, among other things, objected to the indenture of October 27th 1842, that it was not proved that the meeting, at which the making of it was authorized, consisted of a majority of the proprietors. This objection was overruled. The tenants then offered to give evidence to prove, affirmatively, that a majority of the proprietors was not present, &c. This evidence was rejected. The two indentures were read to the jury, subject to all objections appearing therein, and in said records. The first of said indentures (the lease) was admitted, not as evidence of an independent title under which the tenants claimed, but as evidence bearing on the second indenture.

The demandant contended, that the conveyance made by the second indenture was fraudulent and void, as against the creditors of the corporation, being intended to delay and hinder them; but the jury, upon the evidence, and under the instructions given by the judge, found that it was not intended to delay and hinder creditors.

A verdict was returned for the tenants, subject to the opinion of the whole court upon the questions raised by the demandant at the trial.

*B. F. Butler,* for the demandant. The meeting held on the 14th of October 1842 was not legally called, and therefore the vote directing the conveyance by Thurston was unauthorized and void. The corporation had passed no vote or by-laws on the subject of calling meetings, and had no assessors or committee who could call a meeting under the Rev. Sts. c. 20, § 8. Nor was the meeting called according to § 17 or § 35 of the same chapter, providing for the calling of meetings, by a justice of the peace, on the application of five, at least, of the members of the corporation. The tenants must therefore resort to the common law as to notice of the meetings of corporations. But by that law, personal notice of meetings must be given to all the corporators. *Stow* v. *Wyse,* 7 Connect. 219. *Savings Bank* v. *Davis,* 8 Connect. 191. *Congregational Society of Bethany* v. *Sperry,* 10 Connect. 200. Angell & Ames on Corp. (2d ed.) 391, 392. Want of legal notice can be waived only by the consent of every corporator when present at a meeting. *The*

*King* v. *Theodorick*, 8 East, 543.    See also *Machell* v. *Nevinson*, 11 East, 84 – 87, *note*.    And it does not appear that all the members ever attended any meeting.

Holmes, the clerk of the corporation, being interested in the suit, was not a competent witness.    *White* v. *Derby*, 1 Mass. 239.    *Clark* v. *Hoskins*, 6 Connect. 108.    *Stebbins* v. *Sackett*, 5 Connect. 258.    *Campbell* v. *Tousey*, 7 Cow. 64.

*Robinson & Caverly*, for the tenants.    The Rev. Sts. *c*. 20, do not apply to the corporation whose acts are now called in question, as it is not, strictly, either a religious society, within the meaning of that chapter, or a mere joint stock corporation, but partakes of the nature of both.    The common law doctrine, as to notice of its meetings, is therefore to be applied to it. Reasonaole notice, and such as the corporation had adopted and practised upon, from its first establishment, is all that can be required.    *The King* v. *Hill*, 6 Dowl. & Ryl. 605, and 4 Barn. & Cres. 441.    Angell & Ames on Corp. (2d ed.) 393. From the uniform practice of the corporation to call its meet-'ngs, as that of October 14th 1842 was called, the court may presume the existence of a by-law, if a by-law is necessary to warrant that mode of calling meetings.    The tenants have a right to say that every member of the corporation was present at the meeting on the 18th of October 1842.    The record states that "the proprietors met."    If all were present, no previous notice of the meeting was necessary.    *The King* v. *Theodorick*, 8 East, 543.    See Angell & Ames on Corp. (2d ed.) 397, 398.    Every presumption should be in favor of the regularity of the proceedings at the meetings of the corporation.    *Thayer* v. *Stearns*, 1 Pick. 112.    *Hayden* v. *Middlesex Turnpike*, 10 Mass. 401.    *Middlesex Husbandmen* v. *Davis*, 3 Met. 138.

The demandant has no right to interpose the objections which he now makes, to the authority of Thurston to make the deed of October 27th 1842.    No member of the corporation calls that authority in question ; and the jury have found that the conveyance was made *bonâ fide*.

The clerk of the corporation was rightly admitted to testify, as he had no direct interest in the event of the suit.    And even

if he had such a direct interest, he was competent, *ex necessitate* to identify the books, and verify the records of the corporation Angell & Ames on Corp. (2d ed.) 518.

*Hopkinson* replied.*

The opinion of the court was delivered at October term 1845.

HUBBARD, J. It being admitted that the levy made by the demandant is free from objection as to matters of form, the question turns upon the validity of the tenants' title ; the estate having been, just prior to the deed under which the tenants claim, the property of the judgment debtors, and, as such, was attached and afterwards levied upon by the demandant.

It is agreed, for the purposes of this action, that the tenants are a religious society in the city of Lowell, regularly organized, and, as such, capable of purchasing and holding real estate for religious purposes. They claim title to the premises, on a part of which the demandant made his levy, by force of an indenture dated October 27th 1842, and made between the Proprietors of the First Freewill Baptist Meeting-house in Lowell, of the first part, and themselves, of the second part, and of which premises they were in possession under a lease made between the same parties, and bearing date May 19th 1841. The lease was read in evidence on the trial, and was admitted, not as an independent title under which the tenants claimed, but as evidence bearing on the indenture of October 27th 1842. If the last indenture can be sustained, the verdict must be confirmed ; otherwise, it must be set aside, and a new trial granted.

This last indenture purports to be executed by Nathaniel Thurston, agent, of the one part, and by Jonathan Woodman, elder, and Ira Caverly, Cyrus Latham, Lorenzo G. How, and Levi Gilman, deacons, of the other part.

Many points, growing out of the transaction, have been discussed ; but the principal question arises on the authority of Nathaniel Thurston to execute the deed, on the part of the Proprietors of the First Freewill Baptist Meeting-house in Lowell, to the tenants. The facts on which his authority rests, as

---

* Numerous points were argued which the court did not find it necessary to decide  The arguments on those points are therefore omitted.

derived from the records of the corporation, sufficiently appear in the statement of the evidence given at the trial. And the question is, whether the meeting of the corporation on the 14th of October 1842, or the adjournment of it at which the votes passed authorizing the sale, and appointing said Thurston to execute the deed, was a meeting valid and binding, as regards the creditors of the corporation; and if not, whether this demandant can take advantage of it.

And first, viewing the proprietors of the meeting-house as a religious society, they are authorized, like other corporations, "to make by-laws and regulations for their own government, and for the due and orderly conducting of their affairs and the management of their property." Rev. Sts. c. 44, § 1. And their meetings are to be "warned in such manner as the society shall, by any by-law or vote, provide; and when they shall make no such order, the meetings shall be warned in such manner as their assessors or standing committee shall, in their warrant for such meeting, direct." Rev. Sts. c. 20, § 8.

In the case of this society, no by-law or vote appears to have existed, directing the manner in which meetings should be warned. Nor is it shown that assessors were appointed; and the directors, chosen by the society, do not, as such, appear to have appointed any meetings.

By the Rev. Sts. c. 20, § 17, it is provided, that when "the assessors or committee of any religious society shall unreasonably refuse to call a meeting, or if there are no assessors or committee qualified to call one, any justice of the peace for the county, upon the application of five or more of the qualified voters, may call a meeting, in the same manner as a justice of the peace is authorized to call a town meeting." Section 27 provides, that "any justice of the peace for the county in which such religious society may be, upon application in writing by any five or more of the qualified voters thereof, may issue his warrant for calling a meeting of the same."

In the present instance, no such application to a justice of the peace, since the meeting of August 1840, has been made, and there do not appear to have been assessors or a committee

authorized to call one.    But in regard to the regularity or irreg-
ularity of meetings prior to that holden on the 14th of October
1842, we do not feel called upon directly to express an opinion.
That meeting of October 14th 1842 was called by the clerk,
on an application made to him by only four members of the
society.

Treating this as a religious society, the meeting, though called
after the manner of other meetings of the society, was not called
by any board of assessors, or standing committee of the society,
nor by a justice of the peace, upon the application of five or
more qualified voters.    It is not, therefore, we think, within any
of the provisions appointed by law for the regular notifying and
calling together of the members of religious societies, for the
transaction of the common business of the society.

Our attention has also been called to § 35 of *c.* 20 of the
Rev. Sts., which authorizes and directs the clerk to warn a
meeting, on an application in writing by any five of the propri
etors, by posting a notification, fourteen days at least before the
time appointed for such meeting.    Without deciding how far
the provisions of that section are applicable only to cases con
templated by §§ 32, 33, 34, it is sufficient to say that the
present notice by the clerk was not issued on an application of
five proprietors ; nor was the fourteen days' notice given, as
required by that provision of the statute.

It is true that, at the adjourned meeting of November 10th
1842, a vote was passed to confirm such of the proceedings as
might have been invalid ; and although, on the 8th of the same
November, the clerk was requested to notify such of the pro-
prietors as were not present at the adjournment of the meeting,
yet the request was limited to those who were in the city.

A corporation may indeed revise and confirm its previous
proceedings, by votes duly passed at a legal meeting called
for that purpose.    But in the present case, there is no evidence
that all the proprietors were present at the adjourned meeting ;
and we cannot infer that this was the case from the mere use
of the phrase, in the records, that " the proprietors met," &c.,
because the terms may intend a part as well as the whole ; and

they rather import, that the company or society had assembled, and not that each individual member of the company was in attendance.　Besides; the adjournment itself was that of a meeting not warned according to the provisions of the statute.

Viewing this then as a religious society, unless we disregard all the provisions of the statute for warning meetings, which are various and convenient, and sanction meetings called by the clerk without a previous vote authorizing them, and without a proper application by a competent number of the proprietors ; unless we intend to give countenance to a custom of calling meetings in a manner not pointed out by the law, nor approved by any direct vote of the society ; we are not justified in sustaining the votes of the 14th of October, and those connected with it on the subsequent days of adjournment.

If the objections had been merely formal, and on examina tion of the records of the society we had found that the laws had been substantially complied with, we might have had more hesitation ; but viewing the objections as material and fully supported, we cannot doubt as to the propriety of holding, that the meetings were not binding, so far at least as the rights of creditors were concerned.

Believing, from the finding of the jury, that no fraud has been committed in this case, and that the tenants are to be viewed in the light of *bonâ fide* purchasers so far as their own conduct is concerned, we have examined carefully the able and elaborate arguments of their counsel, and have considered the question whether (treating the proprietors of the meeting-house as a joint stock corporation, having no relation to a parish or a church, and therefore not within the restrictions of the act for the protection of parishes and the support of public worship, but clothed with authority to purchase, hold, and dispose of, estate, both real and personal) the votes passed by them, authorizing the deed to be given, can be sustained.

Such corporations are authorized to make by-laws, where no provision is specially made for the purpose of determining the manner of calling and conducting their meetings.　And it is urged here, that there being no by-laws, a reasonable notice

to the members of an intended meeting is sufficient; and in this case, it is argued that the notice was reasonable, as it was in conformity to the usage of the corporation for the greater part of its existence, and that it was to be assumed as a fact, where nothing appeared to the contrary, that all the members had notice. But we are of opinion, where a corporation has no by-laws prescribing the manner of calling meetings, of which the members must be presumed to be conusant, that votes passed at meetings of such a corporation cannot be binding, unless it is proved that all the members had notice. *Stow* v. *Wyse,* 7 Connect. 219. Angell & Ames on Corp. (2d ed.) 392. And though corporations, where no rule is prescribed, may act by majorities, yet before such majority can be authorized to act, all the members should be notified. And in regard to the usage, relied upon in this case, of notifications by the clerk without by-law or direction of any committee, however they might avail as to unimportant and ordinary meetings, yet where business of the greatest importance is to be transacted, and much of the property of the company proposed to be sold, whereby the rights of third parties may be affected, we can neither presume that all the members of the corporation were notified, nor legally infer that they ever agreed to such a mode of warning their meetings. We should rather say that such a mode of calling had crept in, through inadvertence and negligence, without the sanction of a majority of the members, and is such as this court will be slow to confirm. We cannot therefore sustain the deed relied upon by the tenants, treating this company as a joint stock corporation, merely for the transaction of common trade in the buying, selling and exchange of estates.

But further; we are of opinion, that though the proprietors appear to have departed from the design of their incorporation, in the purchase of real estate not apparently wanted for their church, and to have entered into speculations with a view to promote the interests of the society, yet they were, notwithstanding, a religious society, acting under a charter conferring no other privileges, and that they continued to be bound by

the statute prescribing the mode and terms of their corporate action.

In respect to the competency of Daniel G. Holmes to testify, to whom an objection was made, on the ground of interest as a creditor of the proprietors, it is unnecessary to decide ; because we are of opinion, that though a stockholder and a creditor, yet, as the clerk of the corporation, making their records and keeping their books, he was, for the single purpose of identifying the books and verifying the records, a competent witness, from the necessity of the case where such clerk is a corporator And it often happens that it is most convenient and useful to select the clerk from among the members. See *Union Bank of Maryland* v. *Ridgely*, 1 Har. & Gill, 408. Angell & Ames on Corp. (2d ed.) 518.

In regard to the lease, we express no opinion as to its validity. or whether the plaintiff, who is said to have been a member of the society at the time of its execution, is estopped to deny the tenants' title under it. But in this stage of the cause, there is nothing shown why the demandant may not be allowed to give proof, whether, so far as it regards the proprietors, any thing passed, by the deed of October 27th 1842, to the tenants or not, that it cannot affect the right of creditors of said proprietors to levy on the property, for the payment of their debts.

*Verdict set aside, and a new trial granted*